861 F.2d 728
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
EGYPTIAN AMERICAN BANK, S.A.E., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 88-1220.
 United States Court of Appeals, Federal Circuit.
 Sept. 21, 1988.
 
 Before MARKEY, Chief Judge, NIES and MICHEL, Circuit Judges.
 MICHEL, Circuit Judge.
 
 
 1
 Egyptian American Bank, S.A.E. (Bank), appeals the order of the United States Claims Court, 13 Cl.Ct. 337 (1987), granting the government's motion for summary judgment and holding that, under its agreement with the State Department (department or government), the Bank did not become a surety for Kramico, S.A.E. (Kramico) and, therefore, with respect to the construction contract between the department and Kramico to build United States embassy offices in Cairo, Egypt, cannot raise any defenses which Kramico, as party to the construction contract, could raise. We affirm.
 
 Background
 
 2
 The contract between the department and Kramico required Kramico to furnish the government, "from reliable surety(ies) within thirty (30) calendar days after the execution of this contract, a performance and a payment bond" in the amount of 10% of the contract price. Kramico asked the Bank to issue a "performance bond" using the government's standard form DS 1167 which, as the Claims Court stated, "sets forth a joint undertaking of the principal and surety." Instead, the Bank responded by issuing to the department "LETTER OF GUARANTEE NO. 82/6849" on the Bank's printed form. The department accepted this instrument in place of the standard government form.
 
 
 3
 As issued, the instrument included: (1) typed below the printed title, "LETTER OF GUARANTEE NO. 82/6849," the words "PERFORMANCE BOND"; (2) additional typed language referring to the construction contract; and (3) printed language stating the following unconditional promise: "We agree to pay you this amount on your first demand, notwithstanding any contestation from the above-named" (referring to Kramico).
 
 
 4
 In a letter dated May 13, 1984, the Bank reiterated that the amount payable under the instrument would be available upon first demand by the department, and that payment would be made "notwithstanding any contestation from our client (in this case Kramico)." Also, the letter requested the department to submit a formal letter and "[t]he original of the guarantee" to the Bank in order to receive payment. Subsequently, the department terminated its contract with Kramico for default, and, in accordance with the instructions set forth in the Bank's letter of May 13, 1984, demanded payment from the Bank. Upon presentation of the required documents by the department, the Bank immediately paid the demand amount of $2,759,980.
 
 
 5
 Thereafter, the Bank and others put forward a proposal by which the embassy building would be completed. When this proposal was rejected by the department, the Bank, alleging that it was Kramico's surety and thus entitled to Kramico's defenses under the contract, asked for the return of its 10% ($2,759,980) payment under the "performance bond" (i.e., "LETTER OF GUARANTEE 82/6849"). When the department denied its request, the Bank filed an action in the Claims Court seeking return of the 10% payment. On cross-motions for summary judgment, the Claims Court granted the government's motion and dismissed the Bank's complaint. The Bank appeals.
 
 OPINION
 
 6
 Summary judgment is appropriate only when a court finds that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed.Cir.1987). In reaching its conclusion, the court must resolve all significant doubt over factual issues, if any, in favor of the nonmovant and draw all reasonable inferences against the party whose motion is being considered. Id. at 1390-91.
 
 
 7
 Both parties agree that an unconditional promise to pay was made by the Bank in "LETTER OF GUARANTEE NO. 82/6849." However, each party offers a different view of how this promise is to be interpreted in view of the above-mentioned language contained in the instrument at issue. Since contract interpretation is a legal issue, George Hyman Construction Company v. United States, 832 F.2d 574, 579 (Fed.Cir.1987), in the absence of a genuine issue of fact, as here, which would affect that interpretation, the court may properly resolve the dispute over interpretation on summary judgment. Our review of the correctness of that interpretation is plenary. See Mingus, 812 F.2d at 1392.
 
 
 8
 We determine that "LETTER OF GUARANTEE NO. 82/6849" did not create a surety arrangement. The arrangement created between the Bank and the department more closely resembles a letter of credit issued by the Bank at the request of its customer, Kramico. The issuer of a letter of credit assumes a primary obligation to the beneficiary. See, e.g., Barclays Bank D.C.O. v. Mercantile National Bank, 481 F.2d 1224, 1236 (5th Cir.1973), cert. dismissed, 414 U.S. 1139 (1974). When the Bank provided the department with a document clearly stating that (1) the Bank held 2,759,980 U.S. dollars at the department's disposal, and that (2) this amount would be paid on the department's first demand, notwithstanding any contestation from Kramico, it created a primary obligation. By the Bank's own admission, it chose this arrangement because "a bank prefers an obligation assumed under a bond be automatic" so that the institution can protect its reputation in the financial community.
 
 
 9
 As the Claims Court noted, when letters of credit are used, a court does not look to the underlying contract between the contractor and the beneficiary. The court looks at only the terms of the letter of credit to determine the duties of the bank and the beneficiary unless the terms of the letter of credit "expressly" include the underlying contract. See Philadelphia Gear Corp. v. Central Bank, 717 F.2d 230, 237 (5th Cir.1983). In this case, although the letter of credit referred to the underlying construction contract, it did not expressly include the contract's terms.
 
 
 10
 The Bank's letter to the department dated May 13, 1984 further supports our view that the Bank's response to Kramico's request was a letter of credit. The May 13, 1984 letter restates the unconditional nature of the Bank's promise and indicates that the department need only submit a formal request letter and the original of the instrument in order to receive payment. When the department provided these documents, the Bank responded immediately with the full amount. Furthermore, when the Bank paid, it made absolutely no mention of any reservations with regard to claims against the government, nor did the Bank indicate that its payment was in any way conditional.
 
 
 11
 Finally, even if we accept the Bank's interpretation that because the instrument, although containing an unconditional promise to pay, also contains language which suggests that it is actually a "performance bond" which created a surety arrangement, the Bank cannot prevail. In the event of ambiguous contract language which reasonable men could interpret in different ways, the interpretation should be the one "which is more favorable to the party who did not draw the provision." Thanet Corp. v. United States, 591 F.2d 629, 633 (Ct.Cl.1979). See also ITT Arctic Services, Inc. v. United States, 524 F.2d 680, 684 (Ct.Cl.1975); Kenneth Reed Construction Corp. v. United States, 475 F.2d 583, 587 (Ct.Cl.1973). The Bank chose to reject the government's form and substitute its own in order to protect its own reputation in the banking community. Accordingly, the Bank must be properly viewed as the drafting party. See, e.g., East Girard Savings Association v. Citizens National Bank and Trust Co., 593 F.2d 598 (5th Cir.1979). Thus, the Bank bears the consequences of any reasonably conflicting interpretations to be found in "LETTER OF GUARANTEE NO. 82/6849."
 
 
 12
 For these reasons, the grant of summary judgment to the government is affirmed.